Receipt number 9998-4378287

FILED
Dec 20 2017
U.S. COURT OF
FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

_____
                                           )
KANE COUNTY, UTAH, individually and        )
on behalf of all others similarly situated,)
                                           )
                    Plaintiffs,            )   No. 17-1991C
       v.                                  )
                                           )   CLASS ACTION COMPLAINT
THE UNITED STATES,                         )
                                           )
                    Defendant.             )
_____)

# COMPLAINT

1. Plaintiff Kane County, Utah, both for itself and on behalf of all others similarly situated, asks this Court to find that Plaintiffs are entitled to the portion of the amounts to which they were entitled for FY 2017 under the Payments in Lieu of Taxes Act, 31 U.S.C § 6902 *et seq.*, that was not paid them due to Congress' under-appropriation of funds for that fiscal year.

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1346(a)(2).

3. Plaintiff Kane County is a political subdivision of the state of Utah.

4. Kane County is also a "unit of general local government" in which "entitlement land" is located, as these terms are defined in 31 U.S.C. § 6901.

5. On October 20, 1976, Congress enacted P.L. 94-565, commonly known as the Payment in Lieu of Taxes Act, herein referred to as "PILT" or the "statute."

6. PILT was originally codified at 31 U.S.C. § 1601, *et seq.*

7. Pursuant to P.L. 97-258, on September 13, 1982, the statute was re-codified "without substantive change" at 31 U.S.C. §§ 6901, *et seq.*

8. 31 U.S.C. § 6902 provides that:

> "the Secretary of the Interior shall make a payment for each fiscal year to each unit of general local government in which entitlement land is located as set forth in this chapter."

9. 31 U.S.C. § 6903(b)(1) sets forth the manner by which the annual payment to each eligible unit of local government is specifically determined.

10. As the Supreme Court found in *Lawrence County v. Lead-Deadwood School District, No. 40-1*, 469 U.S. 256, 258 (1984), the purpose of the statute was to compensate local governments for the loss of tax revenues resulting from the tax-immune status of federal lands located in their jurisdictions and for the cost of providing services related to these lands.

11. As the Court also noted, the Federal Government had, for many years prior to the enactment of PILT, been providing payments to partially compensate state and local governments for revenues lost as a result of the presence of tax-exempt federal lands within their borders, but Congress and others had identified a number of flaws in the existing programs. Prominent among congressional concerns was that, under systems of direct payment to the States, local governments often received funds that were insufficient to cover the full cost of maintaining the federal lands within their jurisdictions.

12. In this regard, in enacting PILT, Congress was well aware that users of these federal lands, such as tourists and hunters, suffer accidents requiring emergency services or hospitalization for which they cannot always pay; commit crimes that call for police protection, prosecution, and incarceration; create waste that necessitates the construction of sewage treatment plants; use roads that must be paved and maintained; and generally impose a strain on a local government's limited resources without providing much in the way of compensating revenues.

13.     The above notwithstanding, the PILT statute from the date it was originally enacted until it was amended on October 3, 2008, contained the following section, which was codified in 31 U.S.C. § 6906:

> "Necessary amounts may be appropriated to the Secretary of the Interior to carry out this chapter [31 U.S.C. §§ 6901, *et seq.*]. Amounts are available only as provided in appropriation laws."

14.     As noted, this language was excised from the PILT statute on October 3, 2008, the date upon which P.L. 110-343 was enacted.

15.     Moreover, that language was never reinserted into the statute.

16.     Division C, Title VI, § 601(c)(1) of P.L. 110-343, enacted on October 3, 2008, amended 31 U.S.C. § 6906 to read:

> For each of fiscal years 2008 through 2012—
>
> "(1) each county or other eligible unit of local government shall be entitled to payment under this chapter; and
> (2) sums shall be made available to the Secretary of the Interior for obligation or expenditure in accordance with this chapter."

17.     Since 2008, the only amendments made to § 6906 merely extended its applicability – first to FY 2013 and then to FY 2014.

18.     For FY 2017, the inapplicability of § 6906 meant that the funding of the annual PILT payments, which § 6902 required the Secretary of the Interior to make, would have to come through the appropriations process.

## Count I – Fiscal Year (FY) 2017 Underpayments

19.     Plaintiffs restate and incorporate by reference paragraphs 1 through 18.

20. For FY 2017, Congress appropriated a total of $465,000,000 for PILT.[1]

21. $400,000 of the amount appropriated for FY 2017 was for administrative expenses of the program. The remaining $464,600,000 was to be used to make annual PILT payments.[2]

22. The Department of the Interior determined that, under the formula in § 6903, the total payment amounts due the PILT counties for FY 2017 totaled $465,351,037.[3]

23. Of the $464,600,000 available to make annual PILT payments pursuant to § 6902, the agency paid PILT Counties $464,013,453 ($ 586,547 was paid pursuant to §§ 6904 and 6905).[4]

24. As a result of the under-appropriation, for FY 2017, PILT counties failed to receive $1,337,584 ($465,351,037-$464,013,453) or .0029% of the amount to which they were entitled pursuant to § 6902.

25. Under the formula set out in § 6903, for FY 2017, Kane County was entitled to $1,105,790. Due to the under-appropriation, it was paid only $1,102,628.[5]

26. $3,162 ($1,105,790-$1,102,628) or .0029% remains unpaid to Kane County for FY 2017.[6]

---

[1] Fiscal Year (FY) 2017 Payments in Lieu of Taxes (PILT) National Summary Annual Report at page 8, *available at* https://www.doi.gov/sites/doi.gov/files/uploads/2017_pilt_annualreport.pdf (last visited December 20, 2017).

[2] *Id.*

[3] *Id*. at page 20.

[4] *Id*. at page 8.

[5] *Id*. at page 102.

[6] *Id.*

27.     Due to the under-appropriation, in FY 2017, all the other PILT counties also failed to receive .0029% of the amount to which they were entitled under the formula set forth in the statute.

## Count II – Class Allegations

28.     The Named Plaintiff seeks to represent a class defined as:

> All "units of local government" as defined in 31 U.S.C. § 6901(2) entitled to payment under 31 U.S.C. § 6902(a) of the Payment in Lieu of Taxes Act that did not receive payment of the amount to which they were entitled under the Act in FY 2017 solely as a result of Congress' under-appropriation of funds in that year.

29.     A class action may be maintained if the class representative plaintiff(s) meet(s) the requirements of RCFC 23(a) and (b).

30.     The requirements of RCFC 23(a) and (b) can be grouped into five categories: (1) numerosity, (2) commonality, (3) typicality, (4) adequacy, and (5) superiority. *Douglas R. Bigelow Trust v. United States*, 97 Fed. Cl. 674, 676 (2011).

31.     Numerosity requires a class so large that joinder is impracticable. The class in this case numbers almost 2,000 members. More than several hundred members are recognized to meet the numerosity requirement. *Adams v. United States*, 93 Fed. Cl. 563, 575 (2010).

32.     The commonality requirement contains three parts: (1) whether there are questions of law or fact common to the class, (2) whether those common questions predominate over any questions affecting only individual members, and (3) whether the United States has acted or refused to act on grounds generally applicable to the class.

33.     In this case, all potential class members have an identical legal claim for underpayment of PILT funds. While the amount due each claimant is different, the exact amount due each claimant is easily calculated using the statutory formulas and the amount actually paid each

county.  The United States has treated all members of the putative class identically by refusing to pay the full amount due them under the statute.  There are no significant issues that are not common to all potential class members.

34.     Typicality requires that the claims of the representative parties be typical of the claims of the class.  In this case, the claims of the representative party are not only typical of the class, they are identical to the class.

35.     The adequacy requirement has two components:  (1) class counsel must be qualified, experienced and capable of conducting the litigation; and (2) the class members must not have interests antagonistic to one another.

36.     The undersigned is a partner in the well-recognized firm of Smith, Currie & Hancock LLP where he specializes in government contract and appropriation laws and has substantial experience litigating class action lawsuits against the United States in this Court.  Smith Currie has the financial resources to represent and protect the interests of the class.

37.     The representative party and other potential class members have no antagonistic interests. The Named Plaintiff and each potential class member seek to obtain the unpaid portion of the annual statutory payment due it in accordance with the formulas set out in the statute.

38.     The superiority requirement is met when a class action will achieve economics of time, effort, and expenses, and promote uniformity without sacrificing procedural fairness or bringing about other undesirable results.  In this case, many potential class members have claims less than $25,000, and would have difficulty asserting their claims outside a class action.  The class is manageable because each member's individual claim can be precisely calculated using the statute's formulas. Certifying this class will allow for consolidation of claims, reduce the time and expense of litigation, and ensure a consistent decision regarding the government's liability.

39. For the reasons set forth above, all of RCFC 23's requirements for class certification are easily met in this case.

WHEREFORE, Plaintiffs respectfully request that this Court:

(a) certify this case as a class action under RCFC 23;

(b) find that Plaintiffs are entitled to the portion of the amounts to which they were entitled for the FY 2017 that was not paid them due to Congress' under-appropriation of funds for that fiscal year;

(c) award Plaintiffs their costs and attorney's fees incurred in pursuing this case; and

(d) grant Plaintiffs such further relief as this Court deems just and proper.

Respectfully submitted,

s/Alan I. Saltman
Alan I. Saltman
SMITH, CURRIE & HANCOCK LLP
1025 Connecticut Avenue, N.W.
Suite 600
Washington, D.C.  20036
(202) 452-2140
(202) 775-8217 – facsimile
Email: aisaltman@smithcurrie.com

Counsel for Plaintiffs

OF COUNSEL:

Robert O. Fleming
SMITH, CURRIE & HANCOCK LLP
245 Peachtree Center Avenue NE
2700 Marquis One Tower
Atlanta, GA  30303-1227
(404) 582-8022
(404) 688-0671 – facsimile
email: rofleming@smithcurrie.com

Dated:  December 20, 2017